UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRIAN S. SMITH,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

_____/

Case No. 1:08-CV-428
(Criminal Case No. 1:06-CR-213)

HON. GORDON J. QUIST

## OPINION

### I. Introduction

The Court has before it Brian S. Smith's ("Petitioner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1]  Promptly after the filing of a § 2255 motion, the Court must undertake a preliminary review of the motion to determine whether it plainly appears from the motion, the attached exhibits, and the record of prior proceedings that Petitioner is not entitled to relief in the district court.  Rule 4, Rules Governing § 2255 cases. If so, the Court shall make an order for its summary dismissal.  *Id.*  A dismissal under Rule 4 includes those petitions that raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *See Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999) (applying Rule 4 to petition filed under 28 U.S.C. § 2254).  After undertaking the review required by Rule 4, the Court concludes that Petitioner is not entitled to relief under § 2255.

---

[1] The Court appreciates the way Petitioner's counsel "packaged" the Petition and supporting documents.

## II.  Procedural History

On September 13, 2006, a grand jury issued an Indictment charging Petitioner with four counts of wire fraud in violation of 18 U.S.C. § 1343.  Petitioner, through counsel, subsequently entered into plea negotiations with the government.   During the course of negotiations, the government indicated its willingness to agree to a loss figure of $245,000, rather than the intended loss of approximately $443,467.  (Oct. 18, 2006, USAO Letter, Petr.'s Mot. Ex. A.)  A lower loss figure, as explained in the letter, would result in a more favorable sentencing guideline range for Petitioner.  *Id.*  Petitioner executed a written Plea Agreement on December 12, 2006, which called for restitution of $245,000 but did not limit the loss to any specific amount.  By entering into the Plea Agreement, Petitioner agreed to plead guilty to Count I of the Indictment and waive certain rights in exchange for certain benefits.  Notably, the Agreement waived Petitioner's right to appeal or collaterally attack a sentence at or below the upper limit of the guideline range.  Petitioner's waiver reads as follows:

> 8.  Waiver of Appeal Rights.  The Defendant understands that the law affords the Defendant the right to appeal the sentence imposed.  Acknowledging this, the ***Defendant knowingly waives the right to appeal any sentence which is at or below the maximum of the guideline range as determined by the Court.***  The Defendant retains the right to appeal a sentence above the guideline range.  This waiver is in exchange for the concessions made by the U.S. Attorney's Office in this plea agreement.  The ***Defendant also waives the right to challenge his sentence and the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255***.  This agreement does not affect in any way the right of the U.S. Attorney's Office to appeal the sentence imposed by the Court.

(Plea Agreement at 4 (emphasis added).)  The Agreement informed Petitioner of the statutory maximum sentence for the count to which he was pleading guilty.  (*Id.* at 2.)  It also informed Petitioner that the Court would make the final determination of the guideline range in his case, and any disagreement with the guideline range or sentence would not constitute a basis for Petitioner to

2

withdraw his plea.  (*Id.* at 3.)  The Agreement further states, "The Defendant understands that no one–not the prosecutor, the Defendant's attorney, or the Court–can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum."  (*Id.* at 5.)  Petitioner confirmed by signature that he understood the agreement and its consequences and voluntarily agreed to its terms.  (*Id.* at 6.)

On December 20, 2006, Petitioner appeared before a magistrate judge for his plea hearing. There, Petitioner confirmed that he was giving up some of his appeal rights through the Plea Agreement. (Plea Tr. at 9.)  Petitioner also confirmed his understanding that a sentence more severe or harsh than he hoped or expected would, by itself, be an insufficient reason to withdraw his plea. (*Id.*)  At the plea hearing, the government reiterated the terms of Petitioner's Plea Agreement, including the waiver provision in Paragraph 8; Petitioner thereafter stated that he understood all parts of the Agreement.  (*Id.* at 14-16.)  Thus, Petitioner pled guilty to Count I after informing the Court multiple times that he understood the consequences of his plea.  The magistrate issued a Report and Recommendation on December 26, 2006, finding that Petitioner's plea was made knowingly, intelligently, and voluntarily, and with full understanding of the rights he was waiving. On January 19, 2007, the Court issued an Order accepting Petitioner's plea and adjudicating him guilty.

The Court sentenced Petitioner on May 8, 2007.  In so doing, the Court adopted a loss figure of over $400,000, resulting in a guideline range of 30 to 37 months incarceration.  (Sen. Tr. at 9-10.) The Court sentenced Petitioner to 36 months imprisonment, 3 years supervised release, $245,000 in restitution, and $100 special assessment.  Had the Court used a loss of $245,000, Petitioner's guideline range would have been 24 to 30 months.  At his sentencing hearing, Petitioner again confirmed that he had waived his right to appeal a sentence within the guideline range.  (*Id.* at 29-

30.)  Judgment was entered on May 9, 2007.  Petitioner did not file a notice of appeal.  On May 9,

2008, Petitioner filed this Motion under 28 U.S.C. § 2255.

### III.  Discussion

#### A.  *Petitioner Waived the Right to His Current Claim*

Petitioner correctly acknowledges that, as an initial hurdle, he must overcome the waiver

provision in his Plea Agreement.  The United States Court of Appeals for the Sixth Circuit has held

that, "When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally

attack his or her sentence, he or she is precluded from bring [sic] a claim of ineffective assistance

of counsel based on 28 U.S.C. § 2255.  *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).

However, "claims that a guilty plea was not knowing and voluntary, or was the product of

ineffective assistance of counsel...generally cannot be waived,..."  *In re Acosta*, 480 F.3d 421, 422

& n.2 (6th Cir. 2007).  Therefore, Petitioner is generally not barred from maintaining his ineffective

assistance claim if it is directed at his plea, as opposed to his sentence.

Petitioner attempts to bypass his § 2255 waiver by structuring his claim as a challenge to the

validity of his plea.  He characterizes his claim as "ineffective assistance of counsel in failing to

negotiate a more favorable Sentencing Guideline range..." (Petr.'s Mot. at 4.)  Petitioner argues that

had counsel performed competently, he would have incorporated a loss figure of $245,000 into the

Plea Agreement, and consequently, Petitioner would have been sentenced within a lower guideline

range.  In his prayer for relief, Petitioner does not ask that his plea be set aside.  Instead, he reaffirms

his guilt and seeks only to be resentenced under the guideline range that should have been secured

by his counsel.

Despite his assertions to the contrary, Petitioner advances precisely the type of collateral

attack on his sentence that was expressly foreclosed when he entered into the Plea Agreement.  *See*

4

*Sutton v. United States*, No. 1:07CV-00045-TBR, 2007 WL 3237161, at *4 (W.D. Ky. Oct. 31, 2007) (petitioner's claim that counsel was ineffective in providing improper advice about qualifying for a sentence reduction "goes to the issue of sentencing, not to the voluntariness of [petitioner's] plea and waiver."); *see also Hammad v. United States*, No. 3:06-CV-822 RM, 2007 WL 186518, at *6 (N.D. Ind. Jan. 19, 2007) (petitioner's claim that counsel failed to negotiate for or secure a more favorable plea agreement amounted to a challenge to petitioner's sentence and the manner in which it was determined, which was waived in his plea agreement).  Petitioner requests to be resentenced, but simultaneously "stands by" his guilty plea.  (Petr.'s Mot. at 3.)  This is a direct attack upon his sentence.  After a full review of the record in this case, it is evident that Petitioner knowingly, intelligently, and voluntarily waived his right to collaterally attack his sentence.  Because Petitioner attempts to maintain such a challenge–albeit framed in terms of ineffective assistance of counsel during the plea process–Petitioner's claim is precluded.

## B.  Petitioner's Ineffective Assistance of Counsel Claim is Without Merit

The Sixth Circuit noted in *Acosta*, "In prior cases where we have enforced a waiver provision, it has been clear that the defendant did not articulate a basis for attacking the validity of his plea."  *Acosta*, 480 F.3d at 422.  At least one district court in this circuit has construed the language in *Acosta* to mean that if there is no factual or legal basis for Petitioner's plea challenge, the Court may enforce the waiver provision and preclude further review.  *See United States v. Earle*, No. 6: 05-95-DCR, 2007 WL 4570892, at *6 n.4 (E.D. Ky. Dec. 27, 2007) (a collateral attack waiver could conceivably bar a petitioner's claims of plea invalidity if those claims are "patently baseless") (citing *Acosta*, 480 F.3d at 422 & n.2).  For present purposes, the Court merely concludes that even if Petitioner had not waived his present claim, it would fail on the merits.

Petitioner cannot establish ineffective assistance of counsel unless he can show two things. First, Petitioner must establish deficient performance by counsel.  *Strickland v. Washington*, 466

U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). This requires counsel to make errors so serious that he or she was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. *Id.*, 104 S.Ct. at 2064. Second, Petitioner must show that counsel's deficient performance prejudiced Petitioner. *Id.*, 104 S.Ct. at 2064. To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. If Petitioner cannot prove both deficiency and prejudice, his ineffective assistance claim fails. *Id.* at 697, 104 S.Ct. at 2069. When ineffective assistance of counsel allegations are raised in the context of a plea process, the two-pronged analysis from *Strickland* applies with a minor revision. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985); *see also Nagi v. United States*, 90 F.3d 130, 135-36 (6th Cir. 1996). The first prong of *Strickland* remains virtually the same. The second prong, or "prejudice" requirement, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. Petitioner must show a reasonable probability that, but for counsel's errors, Petitioner "would have *insisted on going to trial*." *Id.* (emphasis added); *see also Roe v. Lucio Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000).

Petitioner's ineffective assistance claim fails because he cannot establish prejudice resulting from counsel's alleged deficiencies. Petitioner, relying on *Newman v. United States*, No. 96-6326, 1998 WL 553048, at *3 (6th Cir. 1998), argues that he need not show a reasonable probability that but for counsel's alleged errors he would have insisted on going to trial. Nor could he, given his affirmation of guilt. Instead, Petitioner argues that under *Newman*, he need only establish prejudice by showing a reasonable probability that the conditions of his guilty plea or sentence would have been different but for his counsel's errors. Petitioner's reliance on *Newman* is misplaced. In a

subsequent decision, the Sixth Circuit noted that *Newman* involved a question of whether an attorney's actual conflict of interest prejudiced the petitioner by adversely affecting the terms and conditions of the plea and sentence he accepted. *Short v. United States*, 471 F.3d 686, 696 (6th Cir. 2006). In *Short*, the Sixth Circuit held that, in the absence of a conflict of interest claim, the prejudice prong in *Hill* governs. *Id.* at 696-97 (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985)). Therefore, Petitioner's claim of prejudice that "rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel...is insufficient to establish actual prejudice." *Id.* Because Petitioner definitively stated that he would not have gone to trial, he has not established prejudice; and consequently, he could not prevail on his ineffective assistance of counsel claim.

Furthermore, the offer of the AUSA to Petitioner in October 18, 2000, appears to be an offer to stipulate as to the amount of loss. Such an offer, if accepted, is not binding on the Court. U.S.S.G. § 6B1.4(d); Fed. R. Crim. P. 11(c)(1)(B). In fact, the Plea Agreement, itself, states that "the *Court*, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing." And, "the *Court* shall make the final determination of the Guideline range that applies in this case . . . ." Therefore, it was crystal clear to Petitioner and his counsel that the Court, and not anyone else, would make the final decision as to the amount of loss, no matter what the parties might have stipulated to in any letter or plea agreement. And, even if the Plea Agreement were a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) or (B), Petitioner's only right would be to withdraw his plea - a remedy he rejects in his Petition.

### IV. No Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2255 Cases is a determination that the § 2255 motion, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

## V. Conclusion

For the reasons set forth above, Petitioner's § 2255 Motion (Docket No. 1) will be DISMISSED pursuant to Rule 4 of the Rules Governing § 2255 Cases.  In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate Order will issue.


Dated:  June 4, 2008                              _____/s/ Gordon J. Quist_____
                                                                           GORDON J. QUIST
                                                                  UNITED STATES DISTRICT JUDGE